**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br><br>    Plaintiff, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY AND NEW H3C TECHNOLOGIES CO. LTD., <br><br>    Defendant. | Civil Action No. 6:20-cv-00726-ADA <br><br> **JURY TRIAL DEMANDED** |

**BRAZOS'S SECOND AMENDED COMPLAINT AGAINST HPE AND H3C FOR INFRINGEMENT OF U.S. PATENT NO. 7,386,630**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos"), by and through its attorneys, files this First Amended Complaint for Patent Infringement against defendant Hewlett Packard Enterprise Company ("HPE") and New H3C Technologies Co. Ltd. ("H3C") (collectively, "Defendants"), and alleges:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including §§ 271, 281, 284, and 285.

2. Brazos alleges that Defendants infringe U.S. Patent No. 7,386,630 ("the '630 Patent"). Brazos seeks damages and other relief for their infringement of the '630 Patent.

## THE PARTIES

3. Brazos is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

4. Upon information and belief, HPE is a corporation organized and existing under the laws of Delaware, with a regular and established place of business located at 14231 Tandem Boulevard, Austin, Texas 78728. HPE may be served through its designated agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

5. Upon information and belief, H3C is a corporation formed under the laws of China with a principal place of business at Tower 1, LSH Center, 8 Guangshun South Street, Chaoyang District, Beijing 100102 China. H3C is a provider of digital solutions ranging from digital infrastructure products to digital platforms and end-to-end technical services.

6. HPE has a "unique partnership" with H3C in which it owns a 49 percent stake in H3C.[1]

7. HPE has commercial arrangements with H3C to buy and sell HPE branded servers, storage, and networking products. During FY 2020, 2019 and 2018, HPE recorded approximately $737 million, $897 million and $1.3 billion of sales to H3C and $215 million, $202 million and $273 million of purchases from H3C, respectively. Payables due to H3C as of October 31, 2020 and 2019 were approximately $29 million and $39 million, respectively. Receivables due from H3C as of October 31, 2020 and 2019 were approximately $19 million and $32 million, respectively.[2]

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

---

[1] https://www.hpe.com/us/en/newsroom/press-release/2019/09/hewlett-packard-enterprise-new-h3c-delivers-double-digit-market-share-and-attains-number-one-position-in-second-quarter-of-2019-worldwide-server-revenue-tracker.html; *see also* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 49.

[2] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 138.

9. This Court has personal jurisdiction over both Defendants. Upon information and belief, Defendants, directly and/or through intermediaries, regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas and elsewhere in the United States. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific personal jurisdiction and have purposefully availed themselves of the privilege of doing business within this District such that they should reasonably and fairly anticipate being brought into court here.

10. This Court has general and specific jurisdiction over HPE. Upon information and belief, HPE has continuous and systematic business contacts with the State of Texas. HPE is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas. HPE, directly and/or through affiliates and/or intermediaries, conducts its business extensively throughout Texas, by shipping, importing, manufacturing, distributing, offering for sale, selling, and/or advertising its products and services in the State of Texas and this Judicial District. Upon information and belief, HPE is subject to the Court's specific jurisdiction by, among other things, directly or indirectly, making, using, offering to sell, and/or selling in the State of Texas and this Judicial District and/or importing into the State of Texas and this Judicial District infringing products.

11. Upon information and belief, Defendants, directly or through intermediaries, participate in the stream of commerce that, with their knowledge, results in infringing products being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the

United States to the State of Texas, including through retailers, distributors, and/or authorized dealers and sales agents in Texas and this Judicial District. Upon information and belief, Defendants, directly or through intermediaries, derive revenues from their infringing acts and the infringing acts of others occurring within the State of Texas and in this Judicial District. Additionally, Defendants, directly or through intermediaries, provide service and support to their customers in the State of Texas and this Judicial District.

12. In addition, or in the alternative, this Court has personal jurisdiction over H3C under Federal Rule of Civil Procedure 4(k)(2) because H3C is not subject to jurisdiction with respect to claims in this complaint in any other state's courts of general jurisdiction and exercising jurisdiction over H3C is consistent with the United States Constitution and laws because H3C has established minimum contacts with the United States as a whole.

13. Venue is proper over Defendant H3C in this Court pursuant to 28 U.S.C. § 1391 because, among other things, defendant H3C is a foreign defendant and not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

14. Venue is propre over HPE in this Court pursuant to 28 U.S.C. § 1400(b) because defendant HPE is registered to do business in Texas, and, upon information and belief, HPE has offices in this Judicial District, and has committed acts of direct and indirect infringement in this Judicial District by, among other things, making, using, distributing, installing, configuring, importing, offering to sell, and selling products that infringe the Asserted Patent. HPE has regular and established places of business in this Judicial District, as set forth below.

15. HPE maintains a regular and established place of business in this Judicial District, at least at 14231 Tandem Boulevard, Austin, Texas 78728:[3,4]

---

[3] *See* https://www.hpe.com/us/en/contact-hpe.html.



16.     Upon information and belief, HPE conducts business and serves customers from its regular and established place of business in Austin, Texas, in this District. Upon information and belief, HPE's Austin office is located on a 52-acre campus.[5]

17.     In October 2019, it was reported that HPE signed a lease for a 27,326-square-foot-space in a 164,714-square-foot office building in North Austin at Paloma Ridge, located at 13620 FM 620 Austin, Texas, 78717.[6]

18.     Upon information and belief, HPE owns at least two properties in Austin, Texas, in this District.[7]

---

[4] *See* https://goo.gl/maps/mojArn1WxaHcHU8v8; *see also* https://goo.gl/maps/cBjm1De4gVPFMeam9.

[5] *See* https://www2.colliers.com/en/properties/austin-continuum/USA-14231-tandem-boulevard-austin-tx-78728/usa1046778.

[6] *See* https://communityimpact.com/local-news/austin/leander-cedar-park/coming-soon/2019/10/23/hewlett-packard-signs-lease-at-paloma-ridge-on-fm-620/.

[7] *See* http://propaccess.traviscad.org/clientdb/SearchResults.aspx (printout attached as Exhibit B).

19. HPE maintains additional regular and established places of business in the State of Texas, nearby to this District, including at 11445 Compaq Center West Drive Houston, Texas, 77070, and 6080 Tennyson Parkway, Suite 400, Plano, Texas 75024.[8]

20. HPE's website states that HPE is "a global edge-to-cloud Platform-as-a-Service company . . . that helps customers connect, protect, analyze, and act on all [of the customer's] data and applications wherever they live . . . ."[9] Upon information and belief, HPE designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States products that infringe the Asserted Patent, directly and or through intermediaries, as alleged herein. HPE markets, sells, and/or offers to sell its products and services, including those accused herein of infringement, to actual and potential customers and end-users located in Texas and in this District, as alleged herein.

21. HPE's website permits customers to configure and customize HPE products, including the HPE FlexNetwork MSR Router Series and the HPE FlexNetwork HSR Router Series, and request price quotes from HPE on the configured products.[10] HPE's website also permits users to purchase HPE products directly from HPE's website.[11]

22. Upon information and belief, HPE offers trainings and/or certifications to its employees including, *inter alia*, trainings and certifications regarding the sales and/or service of HPE products, including products designed and developed, in whole or in part by H3C. For example, HPE offers an HPE Certification to HPE employees, including HPE sales team

---

[8] *See supra* note 3.

[9] *See* https://www.hpe.com/us/en/about.html.

[10] *See, e.g.*, https://h22174.www2.hpe.com/SimplifiedConfig/Welcome (printout attached as Exhibit C).

[11] *See, e.g.*, https://buy.hpe.com/us/en/networking/routers/c/4172265.

members, that teaches how to "design, implement, and configure complex data center solutions based on the HPE FlexNetwork Architecture."[12]

23. As of August 2020, HPE advertised at least fifteen public job postings for positions at HPE's Austin, Texas office.[13]

### COUNT I
### Infringement of U.S. Patent No. 7,386,630

24. Brazos re-alleges and incorporates by reference the preceding paragraphs 1–23 of this Complaint.

25. On June 10, 2008, the U.S. Patent & Trademark Office duly and legally issued the '630 Patent, entitled "Using Policy-Based Management to Support Diffserv Over MPLS Network." A true and correct copy of the '630 Patent is attached as Exhibit A to this Complaint.

26. The '630 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

27. Brazos is the owner of all rights, title, and interest in and to the '630 Patent, including the right to assert all causes of action arising under the '630 Patent and the right to any remedies for the infringement of the '630 Patent, including the exclusive right to recover for past infringement.

28. The Accused Products that infringe at least one claim of the '630 Patent include but are not limited to HPE's routers that utilize differentiated services ("Diffserv") and multi-protocol label switching ("MPLS") functionality to prioritize and route traffic through MPLS tunnels in a communication network for network service providers and their customers, *i.e.*,

---

[12] *See* https://certification-learning.hpe.com/TR/datacard/Course/00908176.

[13] *See* https://www.linkedin.com/jobs/search?keywords=Hewlett%20Packard%20Enterprise&location=Austin%2C%20Texas%2C%20United%20States (printout attached as Exhibit D).

DiffServ-aware TE, including but not limited to, the FlexNetwork MSR Router Series[14], the FlexNetwork HSR Router Series[15] and the HPEA8800 Router (collectively, the "Accused Products").

29. Upon information and belief HPE and/or H3C make, use, sell, offer for sale, import, and/or distribute the Accused Products in the United States, including within this Judicial District.

30. Upon information and belief, the Accused Products also include products designed and developed by H3C, alone or together with HPE. Such products include but are not limited to the FlexNetwork MSR Router Series, the FlexNetwork HSR Router Series and the HPEA8800 Router.

31. The Accused Products are configured to perform each element of and infringe at least the exemplary claim 18 of the '630 Patent, which recites:

> A method comprising:
>
> defining a mapping policy configured to map between an experimental field and a unique per-hop-behavior;
>
> defining a customer policy comprising a tunneling mode and a tunnel group identifier, the customer policy being configured to govern the treatment of individual customer traffic;
>
> defining a network policy that is configured to define the Diffserv treatment of aggregated traffic;
>
> translating the mapping policy, the network policy and the customer policy into device-specific commands; and
>
> sending the device-specific commands to policy targets, wherein each policy target comprises a network device that includes an interface assigned a role name associated with the customer policy, at least one of the interfaces

---

[14] *See, e.g.*, https://buy.hpe.com/us/en/search/?text=%22msr%22.

[15] *See, e.g.*, https://buy.hpe.com/us/en/search/?text=%22hsr%22.

>       comprising an egress interface of one of multi-protocol
>       label switching tunnels.

32. According to HPE, "Diff-Serv is a model that provides differentiated QoS guarantees based on class of service. MPLS TE is a traffic engineering solution that focuses on optimizing network resources allocation. DiffServ-aware TE (DS-TE) combines them to optimize network resources allocation at a per-service class level. For traffic trunks which are distinguished by class of service, this means varied bandwidth constraints. Essentially, what DS-TE does is to map traffic trunks with LSPs, making each traffic trunk traverse the constraints-compliant path."[16]

33. The Accused Products are configured to provide "a full-featured, resilient routing platform, including IPv6 and MPLS, with up to 36 Mbps forwarding capacity and 28 Gbps of IPSec VPN encrypted throughout. These routers also support HPE Open Application Platform (OAP)modules to deliver integrated industry-leading HPE AllianceOne partner applications such as virtualization, unified communications and collaboration (UC&C), and application optimization capabilities."[17]

34. The Accused Products are configured to implement a policy server that enables the definition and deployment of a customer policy, a network policy, and a mapping policy. The policy server is arranged to create a group of MPLS tunnels and associate the tunnels to the mapping policy and the customer policy. The network policy is configured to define the Diffserv treatment of aggregated traffic. The customer policy includes a tunnel group identifier and a tunneling mode, and maps customer traffic to MPLS tunnels. The policy server translates the customer policy, the network policy, and the mapping policy into device-specific commands, and

---

[16] *See* https://techhub.hpe.com/eginfolib/networking/docs/routers/msrv5/cg/5200-2320_mpls-cg/content/459367131.htm.

[17] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c04315129.

then deploys the device-specific commands to the network interfaces of the affected network devices.

35. The Accused Products are configured to define a mapping policy configured to map between an experimental field and a unique per-hop-behavior.

36. The Accused Products are configured to practice a method of using policy-based management to support Diffserv over MPLS network. The Accused Products with MPLS Traffic Engineering ("MPLS TE") and Diffserv functionality, *i.e.*, Diffserv-aware TE, prioritize and route traffic through MPLS tunnels for network service providers and their customers.



Figure A

37. Figure A above shows an MPLS network architecture.[18] "MPLS groups packets with the same characteristics (such as packets with the same destination or service class) into a forwarding equivalence class (FEC). Packets of the same FEC are handled in the same way on an MPLS network."[19] *See* Figure B below.

---

[18] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c05030698 at 2.
[19] *See id.* at 1.



A label is encapsulated between the Layer 2 header and Layer 3 header of a packet. It is four bytes long and consists of the following fields:

- Label—20-bit label value.
- TC—3-bit traffic class, used for QoS. It is also called Exp.

Figure B

38. The Accused Products define a mapping policy so that routers map an experimental field, *i.e.*, traffic class ("TC"), to prioritize different packets based on criteria such as the packets' DiffServ code point ("DSCP") values, so that network nodes, or hops, treat each class of packets differently than other classes. "MPLS uses 3 bits, called EXP bits, to carry class-of-service information to provide support for DiffServ. MPLS QoS identifies different traffic flows with different EXP bits and implements differentiated services. MPLS QoS can guarantee low delay and low packet loss ratio for critical service traffic, such as voice and video traffic."[20]

39. The Accused Products are configured to define a customer policy comprising a tunneling mode and a tunnel group identifier, the customer policy being configured to govern the treatment of individual customer traffic.

40. The Accused Products define customer policies by, for example, defining tunnel policies for tunnel groups in the MPLS TE tunnel mode so that provider networks route customer traffic from customers' sites through certain tunnel groups.[21]

41. The Accused Products apply a tunnel policy to treat different customers' traffic differently.[22] For example, the Accused Products create multiple tunnels from router PE 1 to

---

[20] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c05370056 at 113.

[21] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c05370360 at 429.

router PE 2 and apply a tunnel policy to route different customers' traffic through different tunnels.[23] *See* Figure C below.



Figure C

Figure C above shows PE 1 and PE 2 having multiple tunnels in between and that they are connected to multiple MPLS VPNs. The Accused Products provide for the control paths for VPN traffic by configuring tunnel policies.

42. The Accused Products are configured to define a network policy that is configured to define the Diffserv treatment of aggregated traffic.

43. The Accused Products are configured to provide DiffServ-aware TE ("DS-TE") to treat aggregated voice traffic differently than video traffic, for example, by mapping different policies to different traffic classes and tunnels. HPE offers its own proprietary DS-TE mode.[24]

44. The Accused Products are configured to translate the mapping policy, the network policy and the customer policy into device-specific commands and send the device-specific commands to policy targets, wherein each policy target comprises a network device that includes

---

[22] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c05030698 at 185–186, 188–189.
[23] *See id*.
[24] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=c05030698 at 80, 91.

an interface assigned a role name associated with the customer policy, at least one of the interfaces comprising an egress interface of one of multi-protocol label switching tunnels.

45. The Accused Products are configured to send commands to devices, *i.e.*, policy targets, to create and enforce policies. Those devices include routers that serve as the ingress and egress interface of MPLS tunnels associated with customer policies.

46. In view of the preceding paragraphs 31–45, the Accused Products are configured to practice each and every element of at least claim 18 of the '630 Patent.

47. Defendants have infringed, and continue to directly infringe, at least one claim of the '630 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this Judicial District, without the authority of Brazos. HPE's infringing use of the Accused Products includes its internal use, testing, demonstration and/or configuration of the Accused Products.

48. Upon information and belief, each and every element of at least claim 18 of the '630 Patent is practiced or performed by HPE at least through HPE's internal use and configuration of its own Accused Products, and/or through HPE's testing of the Accused Products, and/or through HPE providing services for the Accused Products, including but not limited to providing installation, deployment, support, demonstrations, and configuration of the Accused Products.

49. For example, upon information and belief, as part of HPE's business, HPE offers, for a fee, training and certification programs to its employees, customers, and partners that teach how to use and/or implement the Accused Products. Upon information and belief, HPE, while

teaching others how to use and/or implement the Accused Products, performs demonstrations, and in so doing, practices each and every element of at least claim 18 of the '630 Patent.

50. As of the date of service of the initial complaint, August 18, 2020, HPE has had actual or constructive knowledge of the '630 Patent and has been on notice of its infringement of the '630 Patent and of how the Accused Products infringe the '630 Patent. Notwithstanding this knowledge and notice, since that time, HPE has continued to infringe the '630 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

51. Upon information and belief, H3C has had actual or constructive knowledge of the '630 Patent and has been on notice of its infringement of the '630 Patent and how the Accused Products infringe the '630 Patent since sometime between the date of service of the initial complaint on HPE and June 4, 2021 when Brazos requested review of the source code for the Accused Products. Notwithstanding this knowledge and notice, since that time, H3C has constituted to infringe the '630 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

52. Since at least the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants, with knowledge of the '630 Patent, have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '630 Patent throughout the United States, including within this Judicial District. The Accused Products, as provided to Defendants' customers and end-users and used as intended and instructed, infringe the '630 Patent. Defendants were and are aware that the normal and customary use by end users of the Accused Products infringes the '630 Patent. Upon information and belief, Defendants' customers and end-users have used and continue to use the Accused

Products in the United States in this manner and directly infringe the '630 Patent. Despite Defendants' knowledge of the '630 Patent and knowledge and/or willful blindness that their actions induce infringement by customers and/or end-users, Defendants have made, sold, and/or offered for sale the Accused Products, and are continuing to do so, with the specific intent to actively encourage customers and/or end-users to make, use, sell, offer for sale and/or import one or more Accused Products in a manner that Defendants know to be infringing.

53. Moreover, Defendants have taken and continue to take active steps to induce infringement of at least claim 18 of the '630 Patent, knowing that those steps will induce, encourage, and facilitate direct infringement by customers, product makers, distributors, retailers, and/or end users. Upon information and belief, such active steps include making or selling the Accused Products outside of the United States for importation into or sale in the United States, and directing, facilitating, or influencing its or their intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the Accused Products in an infringing manner. Defendants also direct, control, and/or encourage customers and/or end-users' performance of the claimed steps by taking active steps that include, but are not limited to: making, using, configuring, and selling the Accused Products; instructing end-users to use the Accused Products; creating and disseminating advertising and promotional materials that encourage the use of the Accused Products, including product descriptions, operating manuals, configuration guides, support materials, technical materials, and other instructions on how to implement and configure the Accused Products; and providing training and certification programs that teach and demonstrate how to use and/or implement the Accused Products. Defendants have known that such activities

induce customers and/or end-users to infringe at least claim 18 of the '630 Patent since the date of service of the initial complaint for HPE and at least June 2021 for H3C.

54. Examples of Defendants' manuals, instructional and support materials, and/or configuration guides for the Accused Products, provided by Defendants on their websites, that teach and instruct end-users to use and/or configure the Accused Products in ways that practice the claimed invention, include but not are not limited to:

- https://support.hpe.com/hpesc/public/km/search#q=MPLS.
- https://support.hpe.com/hpesc/public/docDisplay?docId=c05370360;
- https://support.hpe.com/hpesc/public/docDisplay?docId=c05030698;
- https://support.hpe.com/hpesc/public/docDisplay?docId=c05370056;
- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Routers/; and
- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Switches/.

55. Defendants' inducement is ongoing. Defendants have continued to induce direct infringement by others, including by instructing end-users regarding the operation and use of the Accused Products in ways that practice the claimed invention, even after being put on actual notice of the infringement of the '630 Patent.

56. Since the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants have contributed to, and are contributing to, the infringement of the '630 Patent by having others, including HPE with respect to H3C, sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '630 Patent. Defendants have made and/or sold the Accused Products with knowledge that they have special features that are especially made or adapted for infringing the '630 Patent and are not staple articles of commerce

suitable for substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least claim 18 of the '630 Patent.

57. The special features include implementing Diffserv and MPLS functionality to prioritize and route traffic through MPLS tunnels in a communication network, *i.e.*, Diffserv-Aware TE, which is used in a manner that infringes the '630 Patent.

58. The special features constitute a material part of the invention of one or more claims of the '630 Patent and are not staple articles of commerce suitable for substantial non-infringing uses. The Accused Products have no substantial non-infringing uses.

59. Defendants' direct and indirect infringement have caused, and are continuing to cause, injury to Brazos.

60. Brazos has suffered damages as a result of Defendants' direct and indirect infringement of the '630 Patent in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(a) enter judgment that Defendants infringe one or more claims of the '630 Patent literally and/or under the doctrine of equivalents;

(b) enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '630 Patent;

(c) enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '630 Patent;

(d) award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '630 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(e) declare this case exceptional pursuant to 35 U.S.C. § 285; and

(f) award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 25, 2021 | /s/ Raymond W. Mort, III |
|  | Raymond W. Mort, III |
| David M. Stein | raymort@austinlaw.com |
| Texas State Bar No. 797494 | THE MORT LAW FIRM, PLLC |
| dstein@brownrudnick.com | 100 Congress Avenue, Suite 2000 |
| Sarah G. Hartman | Austin, Texas 78701 |
| California State Bar No. 281751 | tel/fax:   (512) 677-6825 |
| shartman@brownrudnick.com |  |
| BROWN RUDNICK LLP |  |
| 2211 Michelson Drive, 7th Floor |  |
| Irvine, California 92612 |  |
| telephone:   (949) 752-7100 |  |
| facsimile:      (949) 252-1514 |  |
|  |  |
| Alessandra C. Messing |  |
| New York State Bar No. 5040019 |  |
| amessing@brownrudnick.com |  |
| Timothy J. Rousseau |  |
| New York State Bar No. 4698742 |  |
| trousseau@brownrudnick.com |  |
| BROWN RUDNICK LLP |  |
| 7 Times Square |  |
| New York, New York 10036 |  |
| telephone:   (212) 209-4800 |  |
| facsimile:   (212) 209-4801 |  |
|  |  |
| Edward J. Naughton |  |
| (admitted *pro hac vice*) |  |
| enaughton@brownrudnick.com |  |
| Rebecca MacDowell Lecaroz |  |
| (admitted *pro hac vice*) |  |
| rlecaroz@brownrudnick.com |  |
| BROWN RUDNICK LLP |  |
| One Financial Center |  |
| Boston, Massachusetts 02111 |  |
| telephone:   (617) 856-8200 |  |
| facsimile:   (617) 856-8201 |  |
|  |  |
|  | *Counsel for Plaintiff* |
|  | *WSOU Investments, LLC d/b/a* |
|  | *Brazos Licensing and Development* |