**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC, d/b/a BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT PACKARD ENTERPRISE COMPANY, <br><br> Defendant. | Civil Action No. 6:20-cv-00726-ADA <br><br> **PUBLIC VERSION** |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)</u>**

## <u>TABLE OF CONTENTS</u>

I.    Factual Background ................................................................................................. 2

    A.    The Recorded Assignment History ................................................................. 2

    B.    ███████████████████████████████ ........................................ 4

    C.    ███████████████████████████████ ........................................ 5

II.   WSOU Bears the Burden to Prove It Held Enforceable Rights to the Relief It
    Seeks, Including Past Damages, Since This Lawsuit's Inception ....................... 7

III.  The Court Should Dismiss WSOU's Complaint in Its Entirety Because the
    Transfer to WSOU Is Void *ab Initio* ................................................................ 10

IV.   Alternatively, the Court Should Dismiss WSOU's Claims in Part Because WSOU
    Lacks Standing to Sue for Past Damages ......................................................... 12

    A.    WSOU Never Acquired the Right to Sue for Past Damages ............................ 12

    B.    ███████████████████████████████████ ................................. 13

V.    Conclusion ......................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
   666 F.3d 1299 (Fed. Cir. 2012)..................................................................................7

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   625 F.3d 1359 (Fed. Cir. 2010).........................................................................7, 8, 11

*Arachnid, Inc. v. Merit Indus.*,
   939 F.2d 1574 (Fed. Cir. 1991)...............................................................................8, 12

*Barlow & Haun, Inc. v. United States*,
   805 F.3d 1049 (Fed. Cir. 2015)..................................................................................10

*Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) .......................................13

*Bowmer v. Bowmer*,
   50 N.Y.2d 288 (N.Y. 1980) ........................................................................................14

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)......................................................................................................8

*Faison v. Lewis*,
   25 N.Y.3d 220 (N.Y. 2015) ........................................................................................10

*LNV Corp. v. Sorrento*,
   31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), (Sup. Ct. N.Y. Feb. 29,
   2016) (attached as Ex. 16) ..........................................................................................10

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019)...........................................................................8, 9, 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................9

*Moore v. Marsh*,
   74 U.S. (7 Wall.) 515 (1868) ...................................................................................8, 12

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007)..........................................................................9, 10, 14

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42 (N.Y. 1956) ............................................................................................14

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994)...........................................................................................10

*Propat Int'l Corp. v. RPost, Inc.*,
473 F.3d 1187 (Fed. Cir. 2007)..........................................................................9

*Script Sec. Sol.., LLC v. Amazon.com, Inc.*,
No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016)
(attached as Ex. 11) ...........................................................................................8

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005).............................................................................7

*UD Tech. Corp. v. Phenomenex, Inc.*,
C.A. No. 05-842-GMS (D. Del. Jan. 4, 2007) (attached as Ex. 13) ..................8

*Uniloc 2017 LLC v. Google LLC*,
No. 4:20-cv-05339-YGR (N.D. Cal. Dec. 22, 2020) (attached as Ex. 14) .........10

*Wacoh Co. v. Chrysler LLC*,
No. 08-cv-456-slc, 2009 WL 36666 (W.D. Wis. Dec. 1, 2008) (attached as Ex.
12) ......................................................................................................................8

*WiAV Sols. LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010)...........................................................................9

**Statutes**

35 U.S.C. § 281 ...........................................................................................................8

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).....................................................................10

Federal Rule of Civil Procedure 12 .............................................................1, 9, 10, 15

U.S. Constitution Article III........................................................................................8

5B Wright & Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2004).................8

**TABLE OF EXHIBITS**

<u>No.</u>                                    **Document Description**

1       Assignment of U.S. Patent Application (USPTO Reel/Frame 014741/0885)
        obtained from USPTO <https://assignment.uspto.gov/>

2       Assignment (USPTO Reel/Frame 035567/0073)
        obtained from USPTO <https://assignment.uspto.gov/>

3       Assignment (USPTO Reel/Frame 043953/0822)
        obtained from USPTO <https://assignment.uspto.gov/>

4       WSOU-HPE-00008254 – Patent Purchase Agreement

5       WSOU-HPE-00008635 – Patent Purchase Agreement Schedule B3

6       WSOU-HPE-00008732 – Amendment to Patent Purchase Agreement

7       WSOU-HPE-00008273 – Patent Purchase Agreement Schedule A

8       Docket Navigator Report on WSOU

9       WSOU-HPE-00011804 – WSOU Operating Agreement

10      WSOU's Responses and Objections to HPE's First Set of Interrogatories

11      *Script Security Solns., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL
        6433776 (E.D. Tex. Oct. 31, 2016)

12      *Wacoh Company v. Chrysler LLC*, 08-cv-456-slc (W.D. Wis. Dec. 1, 2008)

13      *UD Technology Corporation v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, at *9 (D. Del.
        Jan. 4, 2007)

14      *Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-05339-YGR (N.D. Cal. Dec. 22, 2020)

15      Definition of "VOID," Black's Law Dictionary, 11th ed. 2019

16      *LNV Corp. v. Sorrento*, 31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U) (Sup. Ct. N.Y.
        Feb. 29, 2016)

17      WSOU-HPE-00010964 – Fifth Amendment to Patent Purchase Agreement

Defendant Hewlett Packard Enterprise Company ("HPE") hereby moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss this lawsuit by Plaintiff WSOU Investments, LLC ("WSOU"), in whole or in part, for lack of subject matter jurisdiction.

WSOU is not the owner of the patent asserted in this action, U.S. Patent No. 7,386,630 ("the '630 patent"). The putative assignment to WSOU is void because ███████████ ████████████████████████████████ WSOU (which has filed at least 150 cases in this District alone since March 2020 asserting infringement against various operating companies, and has no discernable business other than asserting the patents it purportedly acquired). WSOU also is not, and does not claim to be, an exclusive licensee of the patent. For these reasons, WSOU does not have standing to bring suit.

Alternatively, at a minimum, WSOU lacks standing to sue for past infringement of the '630 patent because it was never assigned the right to do so. A party may not sue for damages pre-dating its ownership of a patent in the absence of an express transfer of that right form the patent's previous owner. In all seven cases WSOU has brought against HPE, the legal instruments assigning the asserted patents do not transfer the right to sue for past infringement. As to the '630 patent, WSOU purportedly acquired title through an August 21, 2017 assignment from Wade and Company ("Wade"), but former owner Nokia's assignment of the '630 patent to Wade did not expressly convey the right to sue for past infringement. As such, Wade possessed no right to sue for past infringement that it could to transfer to WSOU. Wade did not expressly transfer past-damages rights to WSOU either. Accordingly, WSOU lacks standing to sue for past damages, and the Court should dismiss any claim for damages before August 21, 2017.[1]

---

[1] The issues raised in this motion are not the only potential defects in WSOU's standing. For all seven patents asserted against HPE, the assignment history includes assignments made subject to certain encumbrances and retained rights by the assignor, as well as security interests granted to

## I.      FACTUAL BACKGROUND

The assignment documents submitted to the U.S. Patent and Trademark Office ("USPTO") show that WSOU's claim of ownership of the '630 patent is based on transfers through a series of entities.  Documents produced by WSOU in discovery provide additional detail and context for these transfers.  Each transfer is discussed below.

### A.      The Recorded Assignment History

On November 17, 2003, the '630 patent's named inventors Yin L. Liong and Roberto Barnes assigned to Nokia Corporation the "entire right, title, and interest to" the patent application that ultimately issued as the '630 patent.  Ex. 1 (USPTO Reel 014741 Frame 0885) at 3, 7.  On November 18, 2003, the '630 patent's named inventor Man Li did the same.  *Id.* at 4. The assignment was recorded with the USPTO on November 21, 2003.  *Id.* at 7.

On December 31, 2014, Nokia Corporation assigned the '630 patent to Nokia Technologies Oy ("Nokia Tech").  Ex. 2 (USPTO Reel 035567 Frame 0073) at 3.  As shown below, the assignment was of "all right, title and interest in and to" the '630 patent, "subject to certain retained rights in favor of Nokia Corporation":

> Nokia Corporation sells, assigns, transfers and conveys to Nokia Technologies, and its successors and assigns, all right, title, and interest in and to each of the Patents and patent applications listed in Attachment i hereto and all continuations, divisions, and reissues arising from or related to the Patents.
>
> This sale, assignment, transfer, and conveyance to Nokia Technologies, and its successors and assigns, is made subject to certain retained rights in favor of Nokia Corporation for the Patents and patent applications listed in Attachment 1, as are set forth in the Agreement.

---

various entities.  Accordingly, HPE continues to pursue discovery to determine if WSOU holds sufficient ownership rights to sue HPE for alleged infringement, given those encumbrances, retained rights, and security interests.  But, as to the issues addressed in this motion, they are ripe for decision based upon the current record.

*Id.* at 3.  Attachment 1 to the assignment identifies the '630 patent by number.  The assignment was recorded on May 5, 2015.  *Id.* at 1.

On September 25, 2017, WSOU recorded with the USPTO four documents presenting "evidence of legal transfer of title" from Nokia Tech to WSOU: (1) a "PATENT ASSIGNMENT" from Nokia Tech to Wade, entitled "Amended Schedule B3: Assignment of Patent Rights by Nokia Technologies Oy" (hereinafter "Nokia/Wade Assignment"), which is identified as belonging to a July 22, 2017 Patent Purchase Agreement ("PPA") that was amended by an "Amendment to Patent Purchase Agreement" ("APPA") effective August 2, 2017; (2) an assignment of the PPA from Wade to WSOU ("Wade/WSOU Assignment") effective August 21, 2017; (3) a Release and Relinquishment of Interest in WSOU by WCFT Cayman, Ltd., effective August 21, 2017; and (4) an Exhibit listing the assigned patents.  Ex. 3 (USPTO Reel 043953 Frame 0822) at 1, 21.

The assignment clause of the Nokia/Wade Assignment consists entirely of the following language:

> Assignor hereby assigns, transfers, and conveys unto Assignee, all of Assignor's right, title, and interest in and to each of the Assigned Patents.
>
> The assignment, transfer, and conveyance to Assignee set forth above will become effective on the Assignment Date and is made subject to certain encumbrances and retained rights for the Assigned Patents in favor of Assignor and/or its assignees and licensees.

*Id.* at 22.[2]  It contains no reference to any retrospective assignment of the right to sue.  *Id.*

Wade's subsequent assignment of the PPA to WSOU on August 21, 2017 (the Wade/WSOU Assignment) recites as follows:

---

[2] As with the assignment from Nokia Corporation to Nokia Tech, Nokia Tech's assignment to Wade expressly notes it is made subject to certain encumbrances and retained rights.

3

> NOW, THEREFORE, Wade and Company wishes to assign the whole of its interest in the Patent Purchase Agreement to WSOU Investments LLC
>
> Wade and Company hereby assigns to WSOU Investments LLC and WSOU Investments LLC hereby accepts the whole of the interest of Wade and Company in the Patent Purchase Agreement.

*Id.* at 25.  Thus, the Wade/WSOU Assignment purported to transfer all of Wade's rights and obligations under the Patent Purchase Agreement to WSOU.  It did not list any specific patents, and it was signed only by representatives of Wade and WSOU (not any Nokia entities).  Like the Nokia/Wade Assignment, the Wade/WSOU Assignment did not reference any rights to sue for prior alleged infringement.  *Id.*

**B.** ███████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Ex. 4 (PPA – WSOU-HPE-00008254) at 1. ████████████████████████
███████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

*Id.* at 4. ███████████████████████████████

███████████████████    Ex. 5 (Schedule B3 – WSOU-HPE-00008635) at 1.  ████████

████████████████████████████████████████████████

4

██████████████████████████████████████████

████████████████ *Id.*

████████████████████████████████

████████████████████████████████████

██████████████████████████████ Ex. 4 at 6, ¶ 3.1.

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████ *Id.* at 6, ¶ 3.3. ████████

████████████████████████████████████

██████████████████████████████████

████████████████████████ *Id.* at 15, § 9.4.

**C.** ██████████████████████████

████████████████████████████████████

████████████████████



*Id.* at 12, ¶ 6.9. ██████████████████████

████████████████



*Id.* at 4, ¶ 1.23.

███████████████████████████████████████

██████  Ex. 6 (APPA – WSOU-HPE-00008732) at 1 ("████████████████████"

section).[3] █████████████████████████████████  *Id.*  ████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████  *Id.*  █████████

███████████████████████████████████████████████

████████████████████████████████  *Id.* at 2.

On August 21, 2017 (as discussed in § I.A, *supra*), Wade purported to assign its interest

in the PPA to WSOU via the Wade/WSOU Assignment.  Ex. 3 at 25.  █████████████

██████████████████████████████████  *See, e.g.*, Ex. 7

(PPA Schedule A – █████████████ – WSOU-HPE-00008273).  It is asserting those patents in

nearly 200 pending cases against more than 15 different defendants.  *See* Ex. 8 (Docket

Navigator Report on WSOU).  ██████████████████████████████

---

[3] The APPA produced by WSOU is attached as Exhibit 6.  ████████████████████
████████████████████████████████████  Ex. 6 at 5.  HPE has requested a
more legible copy from WSOU, and WSOU has stated it will provide one.



Ex. 9 (WSOU-HPE-00011804) at 1,§ 1.3.  HPE has specifically sought to confirm

███████████████ through discovery, and WSOU has not denied it.  The entirety of

WSOU's substantive response to HPE's interrogatory on this issue is consistent with ████

███: "Brazos [a.k.a. WSOU] is in the business of developing, acquiring, monetizing, and

securing patents and helping inventors do the same."  Ex. 10 (WSOU Resp. to HPE's 1st

Interrog.) at 18 (Interrog. No. 7).  In its pleadings and its interrogatory response, WSOU has not

████████████████████████████████████████████

███ .

## II.    WSOU BEARS THE BURDEN TO PROVE IT HELD ENFORCEABLE RIGHTS TO THE RELIEF IT SEEKS, INCLUDING PAST DAMAGES, SINCE THIS LAWSUIT'S INCEPTION

"Standing to sue is a threshold requirement in every federal action."  *Sicom Sys., Ltd. v.*

*Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005).  As the plaintiff, WSOU bears "the

burden to show necessary ownership rights to support standing to sue."  *Abbott Point of Care*

*Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).  To meet its burden, WSOU "must

demonstrate that it held enforceable title to the patent at the inception of the lawsuit" or else its

infringement claims must be dismissed for lack of jurisdiction.  *Abraxis Bioscience, Inc. v.*

*Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).[4]  These standards apply to "each claim [a

---

[4] Where, as here, the standing challenge is "factual" rather than "facial," the Court "does not assume the correctness of the factual allegations in the complaint.  Rather, in the case of a factual challenge to jurisdiction, the question is whether the facts actually establish that the court has

plaintiff] seeks to press," including claims for past infringement. *Wacoh Co. v. Chrysler LLC*, No. 08-cv-456-slc, 2009 WL 36666, at *9 (W.D. Wis. Dec. 1, 2008) (attached as Ex. 12) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) in the context of a 12(b)(1) motion brought to preclude claims of past infringement); *see also UD Tech. Corp. v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, at *9 (D. Del. Jan. 4, 2007) (attached as Ex. 13) (same).

"The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal *title* to the patent *during the time of the infringement*." *Arachnid, Inc. v. Merit Indus.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original). The mere reference in an assignment to all right, title, and interest in the patent does not transfer the right to sue for past infringement. *Moore v. Marsh*, 74 U.S. (7 Wall.) 515, 522 (1868) ("[I]t is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment."). A party may only sue for past infringement transpiring before it acquired legal title to a patent if a written assignment expressly grants the party a right to do so. *Abraxis*, 625 F.3d at 1367 (quoting *Moore*, 74 U.S. at 522).

The plaintiff must satisfy the requirements of both Article III of the U.S. Constitution (constitutional standing) and 35 U.S.C. § 281 (statutory standing). *See, e.g.*, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234-36 (Fed. Cir. 2019). Constitutional

---

jurisdiction over the matter. In that setting, the burden is on the plaintiff to show jurisdiction, and parties may offer factual evidence bearing on that question." *Script Sec. Sol.., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776, at *2 (E.D. Tex. Oct. 31, 2016) (attached as Ex. 11) (citing 5B Wright & Miller, *Federal Practice & Procedure* § 1350, at 154-80 (3d ed. 2004)). In a factual 12(b)(1) challenge, it is appropriate to consider documentary evidence produced in the litigation, such as the agreements referenced herein. *Script Sec.*, 2016 WL 6433776, at *2.

standing determines whether a plaintiff "may invoke the judicial power" at all, while statutory standing "establish[es] when a party may obtain relief under the patent laws." *Id.* at 1235.

To meet the "injury in fact" requirement for constitutional standing, the plaintiff must possess exclusionary rights in the asserted patent. *Id.* at 1234 (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)). "Exclusionary rights" are "the ability to exclude others from practicing an invention or 'to forgive activities that would normally be prohibited under the patent statutes.'" *Id.* (quoting *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1342 (Fed. Cir. 2007)). Constitutional injury in fact "arises from invasion of a legally protected interest" and thus "occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights." *Morrow*, 499 F.3d at 1339 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Absent exclusionary rights to the patent, the plaintiff cannot be cognizably injured by the alleged infringer. *Morrow*, 499 F.3d at 1340-41. Thus, a plaintiff lacking exclusionary rights cannot have constitutional standing because no injury in fact can occur. *See id.* This standing deficiency cannot be cured by adding the patent owner to the suit. *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007) (holding that an entity that is neither the owner nor an exclusive licensee has no standing, even as a co-plaintiff).

The right to sue for damages pre-dating assignment of a patent is an exclusionary right because it provides the plaintiff with the right to exclude others from practicing the invention during that period of time (which is the legally protected interest that is harmed by an alleged infringement). *Lone Star*, 925 F.3d at 1234; *WiAV Sol.*, 631 F.3d at 1264-65. Whether the plaintiff holds the right to sue for alleged infringement during that pre-assignment period is therefore a constitutional standing issue. *Lone Star*, 925 F.3d at 1234-35. A challenge to a plaintiff's constitutional standing is properly raised under Federal Rule of Civil Procedure

12(b)(1).  *Uniloc 2017 LLC v. Google LLC*, No. 4:20-cv-05339-YGR, at *1, *6 (N.D. Cal. Dec. 22, 2020) (attached as Ex. 14).[5]

The plaintiff's lack of constitutional standing can be raised at any time by a defendant, or *sua sponte* by the Court.  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Barlow & Haun, Inc. v. United States*, 805 F.3d 1049, 1060 n.5 (Fed. Cir. 2015).

## III.  THE COURT SHOULD DISMISS WSOU'S COMPLAINT IN ITS ENTIRETY BECAUSE THE TRANSFER TO WSOU IS VOID *AB INITIO*

The phrase "void *ab initio*" means: "Null from the beginning, as from the first moment when a contract is entered into."  Black's Law Dictionary (11th ed. 2019) (example provided under definition of "VOID") (attached as Ex. 15).  ███████████████████

████, follows this same usage; an instrument that is void *ab initio* is "entirely without effect from inception."  *Faison v. Lewis*, 25 N.Y.3d 220, 222, 224, 230 (N.Y. 2015) (holding that something void *ab initio* "is never entitled to legal effect" because "[v]oid things are as no things") (internal citations omitted); *LNV Corp. v. Sorrento*, 31 N.Y.S.3d 922, 2016 N.Y. Slip Op. 50250(U), at *3 (Sup. Ct. N.Y. Feb. 29, 2016) (attached as Ex. 16) (citing *Faison* for its explanation of the term "void ab initio").  Thus, when an action is "void *ab initio*," that action has no legal effect, and it is as if the action never existed.



As discussed above, WSOU ████████████████████████ ████████████████.  WSOU has not brought forward any evidence to the contrary, and there is no reason to believe it could do so.  ████████████████

---

[5] An exclusive licensee may have constitutional standing.  *Morrow*, 499 F.3d at 1340.  Such a licensee must additionally prove that it has *statutory* standing by possessing "all substantial rights," such that it qualifies as the "patentee"; otherwise, the actual patentee is a necessary party who must join as a co-plaintiff.  *Id.*  A challenge to statutory standing may be brought under Federal Rule of Civil Procedure 12(b)(6).  *See Lone Star*, 925 F.3d at 1235-36.  These issues are not pertinent to the present motion because WSOU does not claim to be any kind of licensee, nor does it allege any facts that would support finding it to be a licensee.

██████████████████████████████████████████ WSOU has not met, and cannot

meet, its burden to demonstrate standing by ███████████████████████████

███████████████████. *See Abraxis Bioscience*, 625 F.3d at 1364 (standing is plaintiff's

burden). ██████████████████████████████ Ex. 6 at 2.  Thus, when

Wade purported to assign its entire interest in the PPA to WSOU via the Wade/WSOU

Assignment, ████████████████████████████████. As a

consequence, WSOU did not step into the shoes of Wade, either in the PPA or in the Nokia/Wade

Assignment, and WSOU did not receive any rights to the '630 patent.

To the extent WSOU may argue that ██████████████████████████

██████████████████████████. *See* Ex. 17 (Fifth Amendment to PPA

– WSOU-HPE-00010964) at 3, § 5.1. ██████████████████████

██████████████████████████████████████████

████████████████ *Id.*; *see also* Ex. 6 at 1-2, § 9.12. ████████████

██████████████████████████████████████████████████

██████████████████████████████ Ex. 17 at 1-3,

§§ Preamble, 1.2, and 5.1. ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

Because a plaintiff must have an exclusive right in a patent (either ownership of the

patent or exclusive licensee status) when it files its lawsuit, WSOU's claim for patent

infringement should be dismissed in its entirety.

## IV.   ALTERNATIVELY, THE COURT SHOULD DISMISS WSOU'S CLAIMS IN PART BECAUSE WSOU LACKS STANDING TO SUE FOR PAST DAMAGES

Even if WSOU can ███████████████████████████████████████

██████████████████ it cannot assert claims for infringement and corresponding damages prior to

August 21, 2017, the date WSOU purportedly acquired the '630 patent.  The Nokia/Wade

Assignment did not transfer the right to enforce claims pre-dating the (alleged) transfer, so that

right could not have been assigned to WSOU.

### A.   WSOU Never Acquired the Right to Sue for Past Damages

WSOU claims it "is the owner of all rights, title, and interest in and to the '630 patent,

including the right to assert all causes of action arising under the '630 Patent and ***the right to any***

***remedies for the infringement*** of the '630 Patent."  Dkt. 1 at ¶ 19 (emphasis added).  But WSOU

lacks standing to sue for past infringement of the asserted patent because the Nokia/Wade

Assignment did not transfer the right to sue for past infringement.  While the assignment does

recite the "entire right, title and interest" to the asserted patent, it is silent as to the right to sue for

past infringement.  *See* Ex. 3 at 22.  Because there was no express assignment of the right to sue

for past infringement, this right was never granted to WSOU.  *Moore*, 74 U.S. at 522; *Arachnid*,

939 F.2d at 1579 & n.7.

Because Nokia Tech did not convey the right to sue for past infringement to Wade, this

right was not, and could not have been, conveyed to Wade's putative successor-in-interest

WSOU.  Moreover, the Wade/WSOU Assignment itself did not specify any transfer of rights to

sue for past infringement, so WSOU did not obtain such rights for the brief period Wade

allegedly owned the patent either.  As a result, WSOU lacks standing to sue for infringement that

occurred before August 21, 2017, the date on which WSOU purported to acquire legal title to the

asserted patents.  Accordingly, the Court should dismiss WSOU's claims for infringement before this date.

**B.** ███████████████████████████████████████████████

HPE anticipates that WSOU may argue the language of the PPA ████████████████ ████████ overrides the language of the Nokia/Wade Assignment.  Such an argument would be incorrect for multiple reasons.

████████████████████████████████████████████

█████████████████████████████████ Ex. 4 at 4, § 1.29; *see also id.* at 1 ("█████████████████████████████████████████"). ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ Ex. 4 at 6, § 3.3; *see also id.* at 8, § 5.1 (█████████████████

████████████████████████████████████████████

█████████████████████). █████████████████████████

██████████████████████████████████████

████████████ *Id.* at 6, § 3.3; *id.* at 4, § 1.29. ███████████████████

████████████████ *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011).[6] ████████████

████████████████████████████████████████████

---

[6] State law generally governs who owns patent rights and on what terms.  *Stanford*, 583 F.3d at 841.  However, whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, is a question of Federal Circuit law.  *Id.*

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ Ex. 5 at 1, 13

("Family" row # 34963).  Amended Schedule B3 does the same.  Ex. 3 at 22, 36 ("Family" row #

34963). ██████████████████████████████████

████████████████████████████████ Ex. 4 at 6, §§ 3.1,

3.3.

Third, it would make no sense to have a specific assignment execution document to be

filed with the USPTO if a different, privately held document (the PPA) were to override it and

impose different terms on the transfer.  To do so would impair the public notice function of the

USPTO assignment registration database, cause confusion over ownership of rights, and be

prejudicial to any subsequent defendant who might be subjected to a claim for past damages

from either or both transacting parties.  *See* Manual of Pat. Examining Proc., § 301, Part V(A)

(June 2020); *Morrow*, 499 F.3d at 1348 ("[T]he perils associated with a relaxed standing

requirement [include] that multiple plaintiffs may subject a defendant to suit for the same

conduct . . . .").

In contract law, a more specific provision controls over a more general one.  *See, e.g.*,

*Bowmer v. Bowmer*, 50 N.Y.2d 288, 294 (N.Y. 1980) ("the specific provisions [of a contract] tend

to restrict the general"); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46-47 (N.Y. 1956) ("Even

if there was an inconsistency between a specific provision and a general provision of a contract .

. . , the specific provision controls."); *see also* Restatement (Second) of Contracts § 203(c)

("specific terms and exact terms are given greater weight than general language").  Thus,

Amended Schedule B3 (the specific Nokia/Wade Assignment), not Section 3.1 of the PPA, is the

controlling assignment provision.

## V.      CONCLUSION

WSOU lacks standing to bring this lawsuit because it has no legal right to the '630 patent.  Alternatively, WSOU never received the right to assert claims for infringement of the '630 patent occurring before August 21, 2017.  The Court does not have subject matter jurisdiction to adjudicate WSOU's claims for infringement where WSOU has no legal right to bring such claims.  Therefore, under Rule 12(b)(1), HPE respectfully requests that the Court dismiss with prejudice the entirety of WSOU's claim, or at a minimum dismiss with prejudice its claim for relief for any acts occurring prior to August 21, 2017.

Date: October 7, 2021

Respectfully submitted,

By:  */s/ Michael R. Franzinger*
Michael D. Hatcher
Texas State Bar No. 24027067
Callie C. Butcher
Texas State Bar No. 24092203
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mhatcher@sidley.com
cbutcher@sidley.com

Michael R. Franzinger
DC Bar No. 500080
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
mfranzinger@sidley.com

Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

**COUNSEL FOR DEFENDANT**
**HEWLETT PACKARD ENTERPRISE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of October 2021, a true and correct copy of the foregoing Defendant Hewlett Packard Enterprise Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) has been served on all counsel of record via electronic mail:

| *Counsel for WSOU, LLC* | *VIA CM/ECF* |
| --- | --- |
| Alessandra C. Messing<br>Timothy J. Rousseau<br>Yarelyn Mena<br>BROWN RUDNICK LLP<br>7 Times Square<br>New York, New York 10036<br>telephone: (212) 209-4800<br>facsimile: (212) 209-4801<br><br>Edward J. Naughton<br>Rebecca MacDowell Lecaroz<br>BROWN RUDNICK LLP<br>One Financial Center<br>Boston, Massachusetts 02111<br>telephone: (617) 856-8200<br>facsimile: (617) 856-8201<br><br>David M. Stein<br>Sarah G. Hartman<br>BROWN RUDNICK LLP<br>2211 Michelson Drive, 7th Floor<br>Irvine, California 92612<br>telephone: (949) 752-7100<br>facsimile: (949) 252-1514 | wsou-hpe@brownrudnick.com |
| Raymond W. Mort, III<br>THE MORT LAW FIRM, PLLC<br>100 Congress Avenue, Suite 2000<br>Austin, Texas 78701<br>tel/fax: (512) 677-6825 | raymort@austinlaw.com |

*/s/ Michael R. Franzinger*
Michael R. Franzinger